Good afternoon, and may it please the Court. Allison LaPlante for Appellant's Center for Biological Diversity, Sierra Club, and Grand Canyon Wildlands Council. I'd like to try to reserve four minutes of my time for rebuttal. Okay, you've got the clock there. I'll try to help you as well. The two closely related questions before the Court today are, first, whether the Forest Service has the power to stop the poisoning of California condors and other wildlife on the Kaibab National Forest and is thus the cause or a cause of plaintiff's injuries. And second, whether an order from the District Court directing the Forest Service to abate the known endangerment would at least partially redress plaintiff's injuries. Here, the answer to both questions is yes, as directed by this Court's precedent and the statute at issue, the Resource Conservation and Recovery Act, or RCRA. With respect to causation, the District Court properly found that the Center's injuries are fairly traceable to the Forest Service's refusal to stop the disposal of lead ammunition on the Kaibab National Forest. Now, first, the Forest Service unquestionably has the authority to stop the lead contamination on the Kaibab National Forest, both as the landowner and as the agency primarily charged with managing the forest to protect it. Now, the Forest Service does not and really cannot dispute this authority. Rather, it points to its practice of deferring to the State of Arizona hunting regulation. But that practice of deferring to the State of Arizona's hunting regulations does not defeat causation in this case. So, counsel, as a practical matter, how would it work? Would we – what would our order read? Would we require the Forest Service to promulgate a regulation? Not necessarily, Your Honor. The District Court, of course, has broad discretion in formulating an equitable relief in this case. It would not necessarily have to involve rulemaking. As we cited in our briefs, the Forest Service has the authority to issue orders. Well, what would our decision read? If we ruled in your favor, how would our judgment read? What would we tell the District Court to tell the Forest Service to do? Well, in this particular instance, because standing is what's on appeal, Your Honor, the judgment would tell the – in our view, should tell the District Court that we have standing. But I'm talking about redressability. That's the concern I have. So in terms of redressability, how could an order be phrased that would redress the issue of the lead ammunition in the forest? How could that be phrased in such a way that the court could compel the Forest Service to issue an order? I'm just trying to think, as practically speaking, how would that work? Sure. And, Your Honor, it's somewhat difficult of a question to answer because we're so new in the case, relatively speaking, and we haven't gone through discovery or expert testimony. And I think that having the benefit of expert testimony to help decide on both sides to help decide what the particulars of any remedy order would look like after trial would be helpful. But I — That's a bit at odds with what I thought the brief said, which would be to enter an open-ended order, in effect, to stop any violation or contribution in contravention of the RCRA statute. That's correct, Your Honor. We think that an order from the district court ordering the Forest Service to abate the ongoing endangerment posed by spent lead ammunition would be adequate. My point only was that as a practical matter, after trial and after expert testimony, it may become clear that more specifics need to be contained in that order to make it — Go ahead. Go ahead. Yes. I was just going to say, so, conceptually, it would just be an order for the Forest Service to abate the lead in the forest? Is that how you envision that the order would read? At this stage, Your Honor, that's correct. It's hard to — if it's that kind of an order, it's hard to distinguish that from Norton and the obligation that the secretary had in that case. So, one of the questions I have is procedural and the other is substantive. Let me go to the kind of more procedural one. This is here on a 12b-1 dismissal, not a 12b-6. Correct, Your Honor. But does, in effect, the question of redressability collapse into the cause-of-action analysis in this kind of a case? Your Honor, I think they're distinct here. And we certainly, of course, don't have to prove that we would prevail on the merits in order to win on the causation question. I think there is some relation between the question of causation and whether the Forest Service is contributing to an ongoing endangerment on the Kaibab National Forest. So in that respect, they're somewhat related. But it's a distinct question here because the question of causation, as this Court has held before, is whether the agency has the power and ability to act. In that respect, this case is very similar to the case of Covington v. Jefferson County. There, there were two agency defendants, essentially, that had jurisdiction over the landfill in question. And one of the agencies argued that there was no causation because it was not the lead agency and didn't have and only had regulatory oversight. But this Court held, rejected that argument, and held that declining to take any regulatory actions by doing that, such inaction, meets the causation of redressability requirements of standing. Sotomayor, and redressability? It did. See, that's the question. If you take causation, I have an easier time understanding that because I have an easier time understanding if the Forest Service decided to go out and do something, it could likely have an impact. Maybe it would be tiny, but it doesn't say it has to be big. So, and particularly or potentially on species that don't migrate. So the causation question seems to me to be different than the redressability, unless, I mean, maybe you can illuminate your view on that. I think the two questions are closely related. I think the redressability question goes more to whether the Court has the power to order the Forest Service to do something. And if it would make a difference. To me, that's the, can we order any effective relief? That's, or can any court order effective relief? That's the, that's the issue that concerns me the most. Whether or not any order that the court enters would make a difference in terms of what, of the lead in the forest. I mean, you know, in a way, I think you're saying that we order the Forest Service to do an affirmative act that they don't have an obligation to do. That's what, that's what's troubling me a little bit about this case. Okay. Your Honor, if I could try to take those, both of those questions. I see them as sort of separate. First, with respect to whether a court could issue an order that would be effective. The answer to that question is yes. What we know is that California condors are being poisoned and other wildlife is being poisoned on the Kaibab National Forest. The plaintiff's complaint clearly alleges not just harm to condors, but to other species that, as Judge McKeown pointed out, don't travel quite as far as the California condor. But even with respect to the California condor, if they are exposed, if there is a less risk that they will be exposed to lead poisoning on the Kaibab, even if they're exposed in Utah, that doesn't mean that the court's order to reduce the lead exposure in Arizona wouldn't be effective. For these birds, there are so few birds, only 73 free-flying birds left. They're opportunistic feeders that feed in groups. Even one poisoned carcass can kill several different birds at one time. And what we know from the limited facts that are in the record is that even small number of deaths for these birds can make a big difference to their population sustainability. I understand that. My question is that the Forest Service is indirectly responsible for the lead. The Forest Service itself is not spreading the lead through its actions. And so that's why it's kind of a once-removed type of harm. And I'm just, that's why the redressability is of concern to me. Because if you were asking, I mean, if the hunters themselves were being compelled to not use the lead, I would see the redressability directly. The once-removed part of it is what's troubling me in terms of the redressability. Okay, Your Honor. So, I think what the court has to assume is that the Forest Service would comply with the district court order to abate the endangerment and that hunters would comply with the law. So, for example, if what the Forest Service did was, so we talk in our briefs about how it issues special use permits to commercial hunting outfits on the National Forest. So, if the Forest Service required a provision in its special use permits that said you must use non-lead ammunition, then we would assume that no commercial outfits would go out unless they complied with that permit. Does the Forest Service issue permits for hunting in the forest? For commercial outfits, Your Honor, not for individual hunters, for non-commercial purposes. So, your argument is it would be a partial redress in that respect because it wouldn't reach the individual hunters, right? That's correct, Your Honor. That was just one example of what an action the Forest Service could take. Well, they could issue some kind of conditional use permit that would have restrictions, for example, correct? For the, for, they have the authority. Partial. That's right. What percentage of the hunting is commercial as opposed to individual? You know, Your Honor, I don't know the exact number. It's relatively small. So, clearly, to abate the endangerment, the district court order would need to go beyond that, and the Forest Service actions would need to go beyond that. And so, again, the Forest Service has the authority to issue orders and to promulgate rules that could actually prohibit hunting with lead ammunition in the Kaibab National Forest. But, you know, here, when I read your brief and then I heard your answer about a particular, it seems to track almost the language in Norton, which said basically there the Utah Wilderness Alliance was contending that a federal court could simply enter a general order compelling compliance with that mandate, talking about the Wilderness Act mandate of non-impairment, without suggesting any particular manner of compliance. And then it goes on to say that this really involves such a broad exercise of non-impairment. And then, of course, they dismiss the case. Now, I recognize that's a 12B6 case, but why isn't this the same thing? It's not the same thing, Your Honor, because the problem the plaintiffs had in the Sua v. Norton case was that they were bringing a cause of action under the Administrative Procedure Act, APA Section 706.1. And Justice Scalia's opinion in that case was very much tied to the statutory language of the APA. And what Justice Scalia was concerned about with the language that Judge McKeown is reading is that only specific types of agency actions can be compelled under the Administrative Procedure Act. This case, of course, is not brought under the Administrative Procedure Act, and in fact couldn't be brought under the Administrative Procedure Act. So you're almost halfway through your argument, and you haven't touched on, it seems to me, your clearest shot through the standing issues, which is simply the text of the statute you're suing under. This is a RCRA case. This isn't just a kind of a general procedural case, and RCRA gives you specific remedies. You can sue the government. The government is a person under RCRA, and you have a specific statutory provision giving you injunctive relief, which means that a district court can do environmental harm. Isn't that correct? Isn't that what this case is about? I wholeheartedly agree, Your Honor. And I think that's the other reason that this case is quite different than the SUA case, because the language, the broad language where Congress provided a right of action against any person, including the United States, to abate an imminent and substantial endangerment gave courts the power to restrain any person or to take any other action as necessary to abate that endangerment. We have a remedy here. Excuse me. Don't you believe that is what distinguishes this case from Norton? Absolutely. That this is a citizen suit brought under the RCRA statutory provision in which Congress has effectively created our redressability. And it's different than the SUA case because that was brought under the APA. But the APA gives the authority to sue agencies as well. That's correct, Your Honor. But what we know from the Supreme Court's decision in Bennett v. Speer is that citizens cannot bring suit under the APA when they have another cause of action. Here, we have a cause of action under RCRA. So we would not even be able to bring suit. Right. But I'm just — to me, that's — there's no distinction between being able to sue under one statute as opposed to being able to sue under a different statute. To me, that's a distinction without a difference because both of them give an avenue to sue the Federal government. So why does that make a difference in terms of redressability? I think it makes a difference, Your Honor, to get at the very concern from the quoted language Judge McKeown was reading about concern about the court issuing an order to compel a duty that's not discreet enough. Here, Congress gave the courts the right to issue that type of order explicitly in RCRA Section 7002. And the plaintiffs in the Norton v. SUA case didn't have a similar cause of action to sue under, so they were simply trying to use the APA to essentially try to enforce a statutory obligation that was — of injunctive relief to abate potential environmental damages. I'm sorry, Your Honor? Here, you have a statutory grant of injunctive relief to abate environmental degradation. We do. And that's why, as we say in our briefs, for the purposes of this case, we believe the redressability question essentially collapses with the statutory question because Congress has given us that authority. Now, to address in the last few minutes, if I can, just address another argument that the government made in its briefing. And the government suggests that plaintiffs in this case are prohibited from bringing or from relying on certain case law because we do not have a procedural right at harm that's been harmed. And to be clear, plaintiffs acknowledge that our right is substantive, that the harm here is substantive, that it's not procedural. But the point in our briefing is that because what would need to happen here is agency action that necessarily involves process, some of the case law, talking about procedural rights, and the fact that you can't exactly predict the outcome of agency process, is relevant to this case. But do you — is your point that it changes the standard of review as it would in a procedural case, or has some other impact? Just that it's relevant by analogy, Your Honor. Relevant for what, though? Well, for putting the Court at ease that the plaintiffs need not show the exact outcome of the Forest Service regulatory process. So the district court erred because the district court thought it was uncertain whether we had redressability because the Forest Service might need to promulgate a rule, it might need to go through the Administrative Procedure Act processes, it might need to comply with NEPA. And so for that reason, the forest — excuse me, the district court thought the redressability was speculative. But as this Court held in NRDC v. EPA, that was a case about effluent limitation guidelines. Now, the plaintiffs' harm in that case was substantive. It was — they were concerned about pollution and water from construction sites, essentially. But when the Court was analyzing the redressability there, it acknowledged that because what was going to be promulgated were effluent limitation guidelines, the agency still had discretion in what it promulgated. We just — we can't predict the exact outcome, but that didn't defeat redressability in that case. And there are — that was a Clean Water case? That was a Clean Water Act case. So comparable to RCRA, they're suing under a very specific statute with specific mandates? That's correct, Your Honor. And it would probably have been argued or it was argued in the Norton case that the Does that matter, the nature of the language in the underlying statute? I mean, why — I don't know that there's much distinction in the — in between the Wilderness Act and the obligation imposed here in terms of the way it's worded. I think there is some similarity in the language, Your Honor, but I think the big difference, again, is whether we have a cause of action. And we do have a cause of action here because Congress created that cause of action, whereas in the Wilderness Act there wasn't. But you're not — I'm going to ask the government about this. I assume you ought not be arguing cause of action here, though, as much as standing. You don't — Correct. Correct. I mean, that's all we're here on. But Congress created our ability to go into court and seek the remedy that Congress created, and that was only my point. Thank you. If I can, I'll reserve the rest of my time. You may. Thank you. Thank you. May it please the Court, Alan Brabender with the Department of Justice here on behalf of the Forest Service. The district court got it right. The plaintiffs lack standing here because there is a redressability problem and there's a causation problem. Now, first with respect to causation. Here, the lead poisoning in condors is the result of the actions of numerous third parties not before the court. Lead is introduced through the choices of the individual hunters who choose to use lead ammunition while hunting big game in the Kaibab National Forest. It is the state of Arizona that regulates that act. Could the Forest Service, if it was so inclined, ban the use of lead ammunition in the forest, in the Kaibab Forest? Hunters can't use. It's got to be a steel shot. The Forest Service does have that authority. This case is not about whether the agency has the authority. It's about whether the agency is the cause of the lead poisoning and whether a court order here could redress any injuries that the plaintiffs have suffered. Why couldn't a court order redress the lead that's in the forest? Why couldn't there be a court order that could require the Forest Service to abate the amount of lead? It could. And if what the plaintiffs are asking for, now the district, it was, they weren't quite as clear in the district court as they are here at what type of order they were seeking. That's why the district court thought that they were asking for a regulation banning lead ammunition. But if what they're saying now is that they're seeking a general order ordering the Forest Service to come into compliance with RCRA, the court would have that authority to enter such an order and the Forest Service would comply. But that's what I thought they said. Right. But even if the court You're saying that's what they're saying now, but that's not what they said before. Is that what you're Well, they weren't quite as clear before as to what they were, what they were seeking. But even if the court entered that sort of general directive, the plaintiffs have not pled sufficient facts to show that such a directive and the Forest Service's actions would redress their injuries. Well, so what, the difficulty I have then would be, you know, on a 12b-1 motion, you'd be down to arguing the scientific facts and how you read the report and whether if they had such an order it would have some diminution and it could help maybe the condors less than it could help the other species. I mean, if they, if they allege that this could occur at the standing stage, isn't that more a question of remedy and cause of action? Well, we think particularly with respect to the cause of action here, it mirrors the causation problem here. And that is inaction is not sufficient to confer cause under Article 3. And that's because in the American system, you must have a duty to act. You cannot be held responsible for inaction unless you have a duty. Right. But the duty came right out of RCRA, which said that they, you have a cause of action against somebody who's contributing or who has contributed or is contributing. And that's the, and that is the problem. The problem with that language. So in addition, in addition to the Forest Service below filing a motion to dismiss for lack of standing, we also filed a motion to dismiss for failure to state a claim because the plaintiffs have not stated a valid claim under RCRA. Are you saying? Well, why not? Because in order to be a contributor to an endangerment under RCRA, under this court's decision in Hines Investments, the Forest Service must have had a measure of control over the waste at the time of the disposal or be actively involved in the process. You just told us that the Forest Service could ban Lid Show. In its discretion, it could. But with respect to whether the Forest Service is a cause of the injuries, the Forest Service is not a cause because... Well, the Forest Service isn't out shooting elk or field stripping elk. Nobody's claiming that. Right. But for the Article 3... The Forest Service is just, as I read the allegations of this complaint, is sitting by while Lid Shot is being used, which everybody knows is toxic to lots of wildlife. You can't use it in most places to shoot ducks anymore for this reason. Lid Shot is... Everyone knows why it's used for big game, but everyone knows that it's environmentally really questionable. Sure. For this court to have jurisdiction, the Forest Service must be a legally sufficient cause of the plaintiff's injuries. But isn't that... The question then, I think, is maybe hair splitting, but the district court dismissed this on lack of standing, correct? Correct. And we're cautioned by the Supreme Court in various cases in later years that we ought to be distinguishing between lack of jurisdiction and failure to state a claim under 12b-6. So they don't have to prove causation to have standing, correct? Sure. They have to allege something that would potentially at least give an allegation that there's causation. Right. That's not speculation. And here, in order for the Forest Service to have a duty, under RCRA, they must have taken some sort of action. Inaction isn't enough. You need a measure of control, and control is an action word. You do not exercise control by not doing anything. Under this Court's Pines investment decision, in order for the plaintiffs to have stated a claim, they have to have alleged that the Forest Service took some sort of action, and they haven't done that. You know what? That doesn't make sense to me, because if you're looking at what RCRA was for in terms of hazardous waste, and you've got the government, for example, operating some nuclear facility, and the waste just flows in to the river, they didn't, you know, and then they don't do anything about it, and maybe it flows in from a third party. Under your theory, well, there would never be a RCRA claim because they didn't do anything. They just sat by. Well, if the government was operating the nuclear facility, they would have had control over the waste at the time. And if it's a third party and the government's not doing anything, they could just say, well, see no evil, see no evil. It just seems to be flowing by. The United States is not the only property defendant in a RCRA suit. They could have sued the third party who had the control. So then you could have more than one party who's contributing, correct? Sure. But in this case, the Forest Service is not a contributor. It would be the individual hunters or perhaps the State of Arizona as a regulatory agency who regulates that act. You've completely lost me because RCRA specifically, and this is 6972A1 or A2 or 2A, gives the injured party an action in federal court under which you can get injunctive relief, including in order to the offending person to take such action as may be necessary to abate the threat. Sure. That is true only against contributors. And the United States and the Forest Service is not a contributor because they didn't, under this court's case law and Hines' investment, they didn't have a measure of control over the waste at the time of the disposal and was not actively involved in the process. The plaintiffs have only alleged inaction, which is not sufficient to state a claim under RCRA. And even if the Forest Service were a cause, redressability would be lacking here. To establish redressability, the plaintiffs must plead sufficient facts showing that it is likely, as opposed to merely being speculative, that a favorable decision would redress their injuries. And as the district court found here, the condors' behavior and feeding habits in wide range mean that condors will be detrimentally exposed to lead, even if the Forest Service were to ban lead ammunition in this court. Did the district court deal at all with the other non-migratory species? I didn't recall that it did. No, and that is because while the plaintiff's complaint briefly mentions other species, their allegations of injury at paragraphs 35 to 42 pertain specifically to condors. And therefore, the plaintiffs have done even less with respect to these other species than they have with condors. And as we state in our brief, Arizona has a very successful voluntary lead reduction program, where up to 90% of hunters in the condor range in Arizona are taking steps to reduce the availability of lead to condors. But these assertions, there's no finding of fact that supports what you just said, is there, in the record? No, but it's in the materials attached to the plaintiff's pleadings. Under which portion of RCRA is the plaintiff seeking standing? Is it under 1A or 1B? Do you know? Well, off the top of my head, it's the citizen supervision, the knowing and endangerment. And so is it the part, did you say 2? I think it's A1B. A1B. A1B, yes. A1B. Okay, so that's what I thought, A1B. So A1B says that a person may commence a civil action against any person, including the United States and any other government or instrumentality or agency, and it includes past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility who has contributed or who is contributing. Which of those did the plaintiff say that the Forest Service was? It the plaintiff's allegation is that the Forest Service is contributing to an endangerment, McKayla. But the statute lists a number of potential contributors, generator, transporter, or past or present owner or operator of a treatment, storage, or disposal facility who has contributed or who has contributed. Right. So those words are not in isolation. They're tied to a description of the types of persons who can be liable under RCRA. Sure. And I think what the plaintiffs, if I recall, the plaintiffs have parroted that language in their complaint. And so it's, I think, on the floor. That's why I was curious which category. Right. I'm not sure which category. They believe the United States. They're just saying contributor generally without a category as listed in RCRA. Sure. Where do you make the argument that you made under Hines a minute ago about this, them not being a contributor, apart from, I mean, you said that really it's Arizona because they are regulating hunting. But did you make the argument that the Forest Service cannot, as a matter of law, be deemed a contributor? Yes, that was in our motion to dismiss in the district court. Where is it in your brief here? We do not make it in our brief here. That's what I thought. And that's why I, so it's kind of hard to address this argument here because I didn't, that was an argument that I heard from you until now. I read it differently in your brief because you talk about Arizona but not about the legal status of the service. Why wouldn't this be an appropriate case where there may be standing but in the end there may not be a cause of action or they may not win but we should let that go back to the district court to figure it out in the first place? Well, we believe that because the only source of the duty here is RCRA and without a duty the Forest Service cannot be a cause and therefore the questions mirror each other. But, and let me be clear. It's only RCRA and it can't be a cause because it's not a contributor, which is an argument you didn't make. Well, we made the law. And to the extent the court is uncomfortable, the United States would be perfectly, would accept a remand to the district court to address whether or not the plaintiffs have stated a claim under RCRA. But this is de novo review, right? It is de novo review. Certainly the court could, but to the extent we haven't briefed that question and the court is uncomfortable with it, the Forest Service would accept a remand. Except for the fact that we also believe redressability is lacking. Because even if the court were to enter the sort of order that the plaintiffs are seeking, they have not shown that it would make a difference. And that is because as a result of Arizona's program, lead levels have been significantly reduced in Arizona. Yet the Condor Recovery Team reports that there has been no observable reduction in lead exposure to condors overall. And that is because condors that visit the Kaibab fly to places such as Utah and are poisoned there. And this makes a difference because of the plaintiff's claim of injury, what it is. They are not claiming injury based on the mere presence of lead in the environment. They claim injury based on the diminished opportunities to see condors in the wild, and specifically the Kaibab National Forest. So what they cannot show is when a condor visits the Kaibab and flies to Utah and dies there of lead poisoning, that a Forest Service ban in this one area would increase their opportunities to see condors in the wild. Is the government taking the position that the plaintiffs here just simply don't have a rick or claim? Yes, the government is taking that position. Because they're not transporters or not running storage facilities, et cetera, et cetera. They're not doing anything that RICRA purports to regulate? The Forest Service is not a contributor, that's correct. And that's the argument or the discussion we got into a minute ago, whether that's a cause of action that you argued under your motion to dismiss, but was not argued here as alternative grounds for affirming the district court. Correct. And finally, this is not a procedural rights case, and therefore the traditional redressability standard applies. The plaintiffs must show that it's likely, as opposed to merely being speculative, that their injuries would be redressed. What's your take on the Norton case? Well, I don't think – if what the plaintiffs are seeking is the sort of general directive that the Forest Service come into compliance with RICRA, if that's the – and they leave then, the court leaves the discretion with how to accomplish that with the agency, we don't believe that SUA is strictly relevant here. Let me just make sure I understood that. I guess you call it SUA, I call it Norton, but we're talking the same case, right? It's the same case, yes. Just to make sure. In the Department of Justice, we call it SUA. Okay. I'll try to get that down. So you're saying that if what they're asking is this broad direction, that then the Norton or the SUA case would not really be implicated? Right. As much as I would like to say SUA applies, I think I have an obligation to say what the law is. Okay. No, and I appreciate that, and I just wanted to understand your argument. And I think it's for the reasons that Judge Parker addressed. Okay. Okay. Thank you. Thank you. Thank you. Just a few brief points. Mr. Brabender spent much of his time actually talking about the merits of the case, which are not before the court at this point, and in doing so conflated the question of whether or not we can prevail on the merits with whether there's causation in this case. And so at one point, Mr. Brabender stated that the government doesn't have causation because inaction can't be a basis for causation. But as I cited the case before in Covington v. Jefferson County, this court held exactly the opposite. In fact, stated that inaction can definitely be a basis for causation. Now, the government's claim that inaction can't be a basis for our cause of action in this case is also incorrect. Judge Rawlinson, you asked about what our theory of liability is, and our theory of liability is that the Forest Service is liable as a landowner, just like any other landowner would be liable under RCRA. Now, the United States' own guidance on enforcing RCRA. Sotomayor, where in the RCRA statute are you taking your argument that a landowner is liable? What part of the language of the statute are you relying on? The contributing to language, Your Honor. It does also mention owner in the statute, but I think that the contributing to is the language that we're relying on. The present owner or operator of a treatment, storage, or disposal facility. Right. That's why that's not the most relevant language. I think that it's the language that is contributing to. And in fact, actually, the ---- But there's a predicate. There's a predicate phrase before who has contributed or who is contributing to. Those words are not in isolation. That's right. But it states any person in the United --"including the United States." Right. But you don't disregard the rest of the statute, though. We're not disregarding the rest of the statute, Your Honor. In fact, actually, it's helpful to look at EPA, who's charged with administering RCRA, generally speaking, EPA's own guidance on how to interpret it. And the United States actually states in its guidance that the word contributing to should be broadly construed and should be used and explicitly recognizes that contributors ---- I agree. But you don't ignore the words that come before contributing to. There's a ---- there's a predicate phrase that comes before that that describes the types of persons who are liable under RCRA. That's ---- that's correct, Your Honor. All right. There is a predicate phrase that comes before there. But in the way that the United States has interpreted the Act, and it had ---- there have been many cases in which the United States has gone after past or present landowners for contributing to waste on their disposal. Well, when they've operated facilities that handle or store treatment or treatment facilities, that's true. I'm just ---- I'm just concerned that the statute be interpreted in its entirety as opposed to just taking out two or three words and relying on those. I see that I'm out of time. Can I ---- So is it your position that under this statute, the language that Judge Rawlinson has just been parsing with you, that a mere landowner is a contributor? Yes. That is our position, Your Honor. And that's also ---- And has this circuit so held? Well, Your Honor, the ---- probably the closest case from this circuit is Price v. United States Navy. And that is 39F3-1011. It's from 1994. That was a case in which a citizen suit was brought against the Navy, and ultimately the citizen suit did not ---- it was with respect to a property that the Navy had formerly owned. So the Navy was being sued as a former landowner of the property. Wasn't that where they had the unspent shales? Is that the case you're talking about? No. This was toxic paint, so lead and other contaminants from paint that had been essentially dumped. And the Navy was stuck under RFRA. Why? Because the ---- it's ---- it was the former landowner. So the question, though, before the court ---- the plaintiffs did not prevail in that case, but that was because they couldn't establish an imminent and substantial endangerment, not because they didn't have a cause of action against the United States or because that, as a former landowner, there's some sort of exception that applied to the United States. But they were ---- in that case, wouldn't they have been the successor in interest to someone who disposed? Somebody ---- they were the ---- they were the ones who were responsible under the theory at the time of the disposal. But you have to be ---- But there was an active disposal by ---- There was by the Navy. By the government? Yes. It was back, I believe, in the 1930s. So they weren't a mere landowner. They were a landowner who also disposed. Here, what in this language that we've been talking with you about for the last five, ten minutes catches mere landowners? The language, a contributor, is the language that's been interpreted by the agency who administers the statute as being broad enough to cover landowners, including ---- Mere landowners, not a landowner who, you know, throws paint cans into a pit behind his house or his factory. Right. Well, Your Honor, it's been interpreted ---- I can give you another example of a case not against the United States, but by owning a property and having third parties come on to the property. I think that the case about spent ammunition is probably the most relevant case. That's Connecticut Coastal Fishermen's Association v. Remington Arms. It's out of the Second Circuit. So the landowner who simply allowed third parties to dump is caught by this language in RCRA. That's correct, Your Honor. Thank you. Thank you. Thank you both for your arguments this afternoon. We appreciate all of that, and the briefing, which is extensive. The case just argued, Center for Biological Diversity v. the Forest Service, is submitted and we're adjourned.
judges: Parker, McKeown, Rawlinson